310 S.E.2d 486

**STATE of West Virginia**

v.

**Benjamin F. WILSON.**

**No. 15591.**

Supreme Court of Appeals of West Virginia.

Dec. 15, 1983.

---

S. Clark Woodroe, Asst. Atty. Gen., Charleston, for appellee.

Paul A. Ryker, Huntington, for appellant.

PER CURIAM:

Appellant Benjamin Wilson was convicted of second degree murder by a jury in the Circuit Court of Cabell County on October 27, 1980 and sentenced to an indeterminate term of from five to eighteen years in the penitentiary. On appeal he assigns several errors committed by the trial court but we address only one, i.e., whether the court erred in allowing a certain photo-graph into evidence at the appellant's trial.[1] For the reasons set forth below, we reverse.

The record in this case indicates that the appellant and Anthony Blessing were indicted and charged with first degree murder in the death of seventy-five year old Enos Adkins. Mr. Adkins was beaten to death in an alley in the early morning hours of May 11, 1980 by two individuals who could not be identified by the only witness to the crime. Josephine Kitchen testified that she heard cries for help and "they are killing me," from what sounded like an elderly man. She also heard sounds of kicking or hitting, and although she saw two individuals standing near the location of the sounds from the window of her home, she never actually saw them beat the victim, who was later identified as Mr. Adkins. Ms. Kitchen also testified that she saw the two individuals walk down the alley and then walk back to the victim. She heard the thumping sounds again and then the two men disappeared.

The trial court admitted a statement made by the appellant to the arresting officers that he had participated in an assault on an elderly man but that Blessing had done most of the beating. The appellant maintained that he had struck the victim only once and that Blessing had struck him with a brick. At trial, however, the appellant testified that he had been drinking and taking Valium on the day of the murder and that he had no recollection of the events that occurred after approximately 6:30 p.m. when he went to a local bar and ordered one quart of beer.

The critical issue at trial was who killed the victim, Mr. Adkins. There was no dispute that the victim had died as a result of a severe beating mostly to the head and neck area. The State's pathologist, Dr. Vasudeo Kshirsagar, testified that the cause of death was multiple injuries of the head and chest. He testified that the injuries were caused by blunt force trauma

---

**1.** Appellant also assigns as error: (1) the failure of the trial court to suppress the appellant's oral statement to the police; (2) the admission of an item of appellant's clothing into evidence; (3) the court's refusal to give the appellant's instruction on circumstantial evidence; (4) the court's refusal to give an insanity instruction; and (5) the refusal to direct a verdict in appellant's favor. These assignments are sufficiently without merit not to be fairly raised.

which is characterized by contact with a fist or stick and that the victim suffered several blows to the head and chest, any one of which could have caused his death.

At trial the State attempted to introduce into evidence an 8 inch × 10 inch close-up color photograph of the victim's lacerated and bloodied face for the purpose of identification. The court made a preliminary ruling that the photograph was gruesome but withheld a ruling on its admissibility. However, later in the trial when the State again attempted to introduce the photograph to show malice and the brutality of the victim's beating, the court refused to allow the photograph into evidence.

It was during the appellant's presentation of evidence that the court did allow the admission of the photograph. The defense elicited testimony from a police officer who took a statement from Anthony Blessing to the effect that Blessing had admitted that he struck the victim with a brick when the victim directed foul language at him. The defense then introduced into evidence a loose brick found near the murder scene. The brick had not been analyzed with the other evidence in this case.[2] After the brick had been introduced into evidence the State again moved to introduce the color photograph of the decedent's face on the theory that it showed lack of imprints from a brick. The court allowed the photograph into evidence on the grounds that the defense had made the condition of the victim a major issue in the trial.[3]

■ When photographs introduced as evidence in a trial are gruesome, the test for admissibility is whether they are of essential value to the State's case. As we stated in syllabus point 1 of *State v. Rowe*, 163 W.Va. 593, 259 S.E.2d 26 (1979):

"Gruesome photographs are not *per se* inadmissible, but they must have something more than probative value, because by the preliminary finding that they are gruesome, they are presumed to have a prejudicial and inflammatory effect on a jury against a defendant. The State must show that they are of essential evidentiary value to its case."

■ In the case before us the appellant's principal theory of defense was that co-indictee Anthony Blessing had inflicted the blow or blows that killed the victim. The brick which was admitted into evidence supported this theory to the extent that Blessing had given a statement to the police that he had hit the victim with a brick. We fail to see the connection between the photograph in question and the brick since one could not determine from the photograph whether the victim had been struck with a brick, fist, or some other object. The victim's face was a bloody and mangled sight; the manner in which it was mangled cannot be determined from the State's exhibit. Indeed, the State's pathologist testified at some length about the manner in which the victim died and the extent of the injuries and he testified that there was only a slight chance that an object like a brick was used to inflict the victim's wounds. Other state witnesses also testified with regard to the victim's condition after the beating. In view of these circumstances, we are of the opinion that the 8 inch × 10 inch color photograph was not essential to the State's case under any of the theories for which it was offered into evidence.

The State had already offered evidence of malice, of the victim's identity, of the extent of the victim's injuries, and of the manner in which the injuries were inflicted. The photograph of the victim's beaten face added nothing essential to the State's proof and the court erred in allowing its admission.

Accordingly, the judgment of the Circuit Court of Cabell County is reversed and the case is remanded for a new trial.

Reversed and remanded.

**2.** After the defense made the brick an issue at trial, the prosecuting attorney did have it analyzed. The tests for blood and flesh particles were negative.

**3.** The record indicates that a black and white version of the subject photograph was available but for reasons not apparent in the record the court chose to allow the color photograph into evidence.

NEELY and McHUGH, JJ., dissent on the grounds that gruesomeness is not an issue in this case because the questioned photograph showed malice and was of essential evidentiary value to the State's case.